66224

IN THE COURT OF CRIMINAL APPEALS
STATE OF ALABAMA

NO. CR-03-1173

TERRY LIGON,
APPELLANT,

VS.

STATE OF ALABAMA,
APPELLEE.

APPEAL FROM THE CIRCUIT COURT OF RUSSELL COUNTY, STATE OF ALABAMA.
CASE NOS. CC-01-352.60-356.60

MOTION TO STAY APPEAL AND ORDER FOR REMAND TO THE TRIAL
COURT FOR FURTHER PROCEEDINGS, DUE TO THE PROCEDURAL
IRREGULARITIES OF THE TRIAL COURT AND MISREPRESENTATIONS
OF EVIDENCE SUBMITTED TO THAT COURT.

TERRY LIGON, PRO-SE
#220217
VENTRESSCORRECTIONAL FACILITY
POST OFFICE BOX 767
CLAYTON, ALABAMA.


EXHIBIT
1D

<u>MOTION TO STAY APPEAL AND ORDER FOR
REMAND TO THE TRIAL COURT FOR
FURTHER PROCEEDINGS, DUE TO THE
PROCEDURAL IRREGULARITIES OF THE
TRIAL COURT AND MISREPRESENTATIONS
OF EVIDENCE SUBMITTED TO THE COURT.</u>

Comes now the Defendant/Appellant, Terry Ligon, pro-se, in the above styled cause and respectfully moves this Honorable Court pursuant to A.R.Cr.P., Rule 1.2 to stay this appeal and order that this cause be remanded back to the trial court for further proceedings or findings of fact, due to the irregularities in the filing, responses and service of the Rule 32 petition, for post-conviction relief in the trial court and misrepresentations of evidence that was submitted to the trial court, and for good cause states the following:

<u>FACTS AND HISTORY OF RULE 32 PETITION</u>

1.) Appellant, (hereinafter Ligon) would refer this Honorable Court to the "Trial Clerk's Record on Appeal", received by this court on May 10, 2004, Ligon's exibits attached to this motion, while explaining cause for this motion to be granted, for as provided in Rule 1.2, A.R.Cr.P., in part states:

> "that the rule shall be construed to serve
> simplicity in procedure, fairness in
> administration, an elimination of
> unnecessary delay and expense, and to
> protect the rights of the individual,
> while preserving the public welfare..."

2.) Ligon avers that the <u>Trial Clerk's Record On Appeal</u> is not an accurate depiction of the procedural history of his Rule 32 petition and could lead this Honorable Court to misinterpret certain findings accordingly. The record on appeal contains wrong dates and omits pleadings and motions submitted by Ligon to the lower court and clearly shows that Ligon never received certain Orders and attachments of the trial court, or an answer submitted by the district attorney' office.

3.) Ligon respectfully avers that the foregoing facts will contadict the actual chronological order of filings and the procedural order between the the Trial Clerk's Record on Appeal and the Case Action Summary therein included, that is before this court, and will also show omissions of transmitting certain Orders and answers pertaining to this Rule 32 petition, which forms the basis for this motion.

a.) On April 11, 2002, Ligon motioned the trial court for a "free-transcript" of his plea of guilty hearing, and was marked as filed by the court on April 13, 2002, (See; Exihibit #1 attached), yet the case action summary (R-01) does not reflect this motion, nor does it show if it was denied or granted;

b.) Ligon never received any "Order" (memo?) from the trial court on 12/04/02 stating that, "the clerk should not accept the Rule 32 petition for filing until petitioner pays the court costs or the court rules on his Affidavit of Hardship." See (R-58). What Ligon did receive was his original single copy of the Rule 32 petition and his in forma pauperis application marked filed on 10/31/02,(R 13-58) and a "highlighted" instruction regarding the Rule 32 to send 3 copies to the court, and his Affidavit of Substantial Hardship, (R 11-12) which clearly shows that document as motioning for an appointment of an Attorney, which was denied on 12/02/02. For as these documents show Ligon could only assume that his Rule 32 petition was filed on October 31, 2002, therefore the court accepted its jurisdiction of the petition.

c.) Ligon did send 3 copies of his Rule 32 petition and the in forma pauperis application back to the court on 12/19/02 with a letter explaining why he was not able to do such the first time. ( R-60 )

d.) During the above times from October to January, 2003, Ligon was facing a civil suit in Russell County Circuit Court also, by the 4 occupants of the other vehicle involved in th accident that forms Ligon's conviction, and Ligon gave a

-deposition of "sort" to the attorneys who represented the alleged victims at Ventress Correctional Facility.See: (Exhibit #2)

e.) The record on appeal does not reflect that the trial court Ordered the district attorney's office to answer to Ligon's petition, yet the district attorney did answer on January 9, 2003, as shown by the Certificate of Service. (R 121-122) Ligon did not receive this answer from the district attorney's office, the legal mail log at V.C.F. will reflect that Ligon did not receive any mail from that party, yet the answer was stamped more than likely on 01/10/03, as Ligon's copy in his record on appeal shows that the filing date was almost "whited-out" , and now the "answer" has no filing date stamped on it, and is listed on the case action summary (R-01) as being file on 3/12/03, which Ligon never recieved either. Interesting , that the trial court now granted Ligon's in forma pauperis application, (R-65) on this very significant day and stamped as filed on 12/23/02, could it be because Ligon's civil suit was settled on 03/11/03? See: (Exhibit #3)

f.) On January 8, 2003, Ligon mailed to the court an Affidevit in Support of his Rule 32 petition with exhibits, (R 110-120) yet these documents were not stamped filed at all and were not listed on the case action summary until 03/12/03.

g.) On June 8, 2003, Ligon motioned the lower court for an Adjudication of Rule 32 Petition and another Motion for an Appointment of Counsel. Ligon never received a reply from the court, nor are these motions reflected on the case action summary or on the Trial Clerk's Record On Appeal.

h.) On November 5, 2003, Ligon once again motioned for an  Appointment of Counsel to aid him with his petition, said motion was filed on 11/6/03, but the trial court never ruled on said motion. (R 123-124)

i.) The Record on Appeal and the case action summary are devoid of any motions, pleadings, or petitions filed by Ligon to this Honorable Court pursuant to his Petition For A Writ Of Mandamus to Order the trial Court to rule on his Rule 32 petition. This Honorable Court did Order the lower court to respond to the Order, which it did on March 30, 2004, ( R 125-126), Order dismissing Rule 32 petition. Attached to the Order was the plea hearing transcript, ( R 127-142) which Ligon never received with his copy of the Order received on 04/05/04. When Ligon received the Clerk's Record on Appeal it is the first time he saw the transcript. Ligon did motion this Honorable Court for the "attachments" that were sent to the court for he did not know what the trial court was specifically refering to in its Order, and this court did not respond to that motion. (See: Exhibit #4) However, this court dismissed Ligon's petition for a writ of mandamus on April 7, 2004, after receiving the lower court's response to it. Ligon then proceeded to motion the trial court for a copy of the "attachments", never receiving a reply. the record on appeal is devoid of these motions as is the case action summary. (See; Exhibit #5) Hence, Ligon had to file his Notice of Appeal.

<u>ARGUMENT</u>

4.) Ligon respectfully avers that the above omissions; the irregularities of the trial court filing procedure; the failure of the trial court to transmit its Order to him; to provide him with "attachments"; and most significantly the failure of the district attorney's office to provide a copy of its answer to him, have generated gross confusion and substantially prejudiced the outcome of his Rule 32 petition in the lower court. A.R.Cr.P., 32.7(a) states in part:

> "...the district attorney shall file with the
> court and send to the petitioner or counsel for
> the petitioner, if any, a response..."

(4.)

Ligon avers that had he had an opportunity to respond and rebut plus submit
certain documents (See: Exhibits #6, 7, and 8 ) to the district attorney's
answer, there was a reasonably strong probability that the outcome of his
Rule 32 petition would not have been dismissed and more than likely an
evidentiary hearing would have resulted at the minimum, especially concerning
the Assault 1st Degree convictions, as a reading of said documents shows none
of the 4 occupants of the other car sustained "serious physical injury  as such
to the prior rulings of this Honorable Court, as to what constitutes serious
physical injury. The transcript of the plea hearing (R 127-142) clearly shows
that the trial court sought a "factual finding"requisite to warrant accepting
Ligon's plea of guilty and inquired if anyone sustained any "serious physical
injury", which was answered in the affirmative by the district attorney and
also defense counsel, stating that the victims suffered blows or trauma to the
body, may have broken bones in addition to internal trauma and injury. (R 136
-137) This information satisfied the trial court to accept Ligon's plea of
guilty to Assault 1st Degree, for serious physical injury is an element of said
offense and must be proved to sustain a charge and conviction. See: Collins v.
State, 508 So. 2nd 295, (Ala. Cr. App. 1987) also David v. State, 467 So. 2nd
268 (Ala. Cr. App. petition to remand. (Ala. 1985). The injuries stated by
the district attorney and defense counsel were stated to him by his counsel
prior to his accepting the plea offer of the State in counsel's office every
time he visited to discuss his case, which Ligon believed and therefore thought
a jury trial would not be of his best interests, however counsel never showed
him any hospital reports or medical records that contained injuries of trauma,
broken bones or serious physical injury of any of the 4 occupants of the other
car that would form a basis for Assault 1st Degree. Nevertheless. based upon
the testimony of the prosecutor and defense counsel at the plea hearing the
trial court accepted Ligon's plea of guilty.

Had Ligon had an opportunity to present to the trial court during the Rule 32 petition litigation the court more than likely would have granted his petition based on his ineffective assistance of counsel claim, for his plea could not have been knowingly, intelligently and voluntarily rendered based upon the misrepresentations of both the State and defense counsel to the trial court, and the court would at the minmum Ordered an evidentiary hearing on counsel's statements.

The trial court summarily dismissed Ligon's petition on March 30, 2004, effectively foreclosing an opportunity for Ligon to present his evidence or arguments as to why relief is warranted. The record on appeal clearly shows that the district attorney filed an answer to the petition, yet Ligon was was foreclosed from responding to it, through no fault of his own. The trial court's Order dismissing the petition states in part:

" that any newly discovered evidence that
petitioner sets forth would not change
the determination of guilt of the petitioner."

How could the trial court determine this crucial, objective fact without Ligon having the opportunity to submit this "newly discovered evidence", unless the trial court was privy to the civil proceedings that were held, besides the evidence must be submitted before a judicial decision on its strength can be rendered, Ligon was deprived of such an opportunity when he never received the district attorney's answer sent to him allegedly on January 9, 2003. as the Certificate of Service clearly states , then refiled on the case action summary on 03/12/04, and still Ligon never received a copy, could it be that the Rule 32 petition was delayed and twarted because the civil law suit was still in progress and was settled on 03/12/03?

Ligon respectfully aver that there has been a great injustice done to him concerning this Rule 32 petition and only an evidentiary hearing can set the

-record on appeal to reflect an accurate rendition of this before this Honorable Court.

Ligon has demonstrated in this motion that the Alabama Rules of Criminal Procedure have not been afforded him, specifically Rule 32.7(a) and the Alabama Rules of Civil Procedure, Rule 5(a) , resulting in a loss of Ligon's due process right made appicable pursuant to the Fourteenth Amendment of the United States Constitution. The Trial Clerk's Record on Appeal clearly shows that Ligon averred that he could not be guilty of Assault 1st Degree, (R 42-43) and (R 47-49) yet he was denied his right and opportunity to present his proof. and, of course, should this motion be denied Ligon will not be able to present it to this court during this present appeal, as it has not been presented to the lower court formally, through no fault of his own.

Ligon would respectfully aver that the evidence before this Honorable Court in this motion and the record on appeal substantially allude to a knowingly, intentionally, and with reckless disregard for the truth show that the prosecutor, and defense attorney at Ligon's plea of guilty hearing did misrepresent material facts to the trial court and require that this case be remanded for a hearing prior to this appeal going foward, "to serve simplicity in procedure, fairness in administration, an elimination of delay and expenses and to protect the rights of the individual all the while preserving the public welfare."

<u>RELIEF REQUESTED</u>

Wherefore, premises, facts, law, and the exhibits being considered Ligon respectfully moves this Honorable Court to: Stay this appeal process; Order that this case be remanded to the trial court for a hearing, and/or for further proceedings; and that the time be tolled for the appeal briefing schedule pending the court's decision on this motion and any other relief this Honorable Court deems just, equitable and proper.

(7.)

Ligon prays this Honorable Court such.

Respectfully submitted,

Terry Ligon,
#220217
Ventress Correctional Facility
P.O. Box 767
Clayton, Al. 36016-0767


## CERTIFICATE OF SERVICE

I hereby certify that I have provided a copy of the foregoing motion and exhibits to the Appellee by placing same in the U.S. Mail , postage prepaid, first class, on this the 20th day of May, 2004, and properly addressed as follows:

        Attorney General's Office
        State of Alabama
        Criminal Appeals Division
        11 South Union Street
        Montgomery, Al. 36130

Terry Ligon

(8.)

IN THE CIRCUIT COURT OF _Russell_ COUNTY, ALABAMA

_TERRY LiGON_ ,
      Petitioner.

Vs.                              CASE. NO. _352, 353, 354, 355_, 35(

STATE OF ALABAMA,
      Respondent.

### MOTION FOR FREE TRANSCRIPT ORDER

Comes now, Petitioner, _TERRY LiGON_ , pro se, pursuant
to Code of Alabama § 12-22-190, et. seq.; and seeks an Order Granting
a free transcript; and shows the following:

    1) The Petitioner is indigent.

    2) The Petitioner is preparing to file a Rule 32 Petition
       for Post-conviction relief.

    3) One issue to be raised is ineffective assistance of Counsel;
       (Counsel failed to inform the Petitioner of his right
       to appeal.)

    4) The Petitioner can not properly prepare his Rule 32 Petition
       in compliance with Rule 32.6(b), Ala.R.Cri.P. without
       the transcript.

Where fore premises considered, Petitioner prays that this Honorable
Court will enter an order granting leave to receive a free copy
of the transcript of the proceedings on _001000 352 , 353 354, 355_
_,356  Assault I & murder_ .

                              Respectfully submitted,

                              _Terry Ligon_

EXHIBIT 1

LAW OFFICES OF
# ROTHSCHILD & MORGAN, P.C.
Post Office Box 2788
Columbus, Georgia 31902-2788

JEROME M. ROTHSCHILD
W. DONALD MORGAN, JR.*
W. JOHN WILSON
ANDREW A. ROTHSCHILD*

ADMITTED IN GEORGIA AND ALABAMA

1025 First Avenue
Telephone No.: 706-324-4167
Facsimile No.: 706-324-1969

January 20, 2003

Mr. Terry Ligon
AIS #: 220217, Dorm 8-B
Ventress Correctional Facility
Post Office Box 767
Clayton, Alabama 36016

Dear Mr. Ligon:

This morning I received a letter from Mr. Robert Farrell who was obviously responding on your behalf to my earlier letter.

After I discussed the filing of the Rule 32 motion with the clerk's office and was given information that nothing had been filed, I actually went to the Russell County Courthouse myself and sat down with a friend of mine who works in the clerk's office. There is no question that you have attempted to file your Rule 32 motion. When a lawyer uses the term "filed" he normally means that the clerk has actually accepted the document, stamped it, and put it in the case record for action by the court. In your situation, there was a technical defect in your submission, that being the lack of an affidavit indicating that you should not be required to pay filing fees. I did locate that affidavit itself in Judge Greene's office later the same day. Based upon my investigation, I am certain that facts are sufficient to show that at the time you gave your deposition you were actively attempting to have a motion filed in the clerk's office for further action by the Judge.

Why is this even important? Because I suspect that the lawyers for Saturn and Evenflo will file a motion in your civil case to take a judgment against you for failure to cooperate in the discovery process. As you will recall, your deposition was ordered by Judge Albert Johnson. Your failure to comply with his order would allow the other parties in the case to file a motion for sanctions. The ultimate sanction is to have your answer stricken and a judgment entered against you.

EXHIBIT 2

Mr. Terry Ligon
January 20, 2003
Page 2

As a practical matter, any judgment entered against you is probably wasted effort because you have no money to pay such a judgment anyway. I do not, therefore, see this as practically harmful.

Nonetheless, it is my job to defend any motion for sanctions filed by other attorneys. The fact that a Rule 32 motion was being attempted at the time you gave your deposition is, I believe, a relevant fact to be argued in stating that the Judge was wrong in ordering you to give a deposition in the first place.

What this letter really relates to are the technical points of law regarding procedure. In the final analysis, what happens at this juncture is probably going to be meaningless in a practical sense. Based on correspondence I have had from other lawyers in the case within the last week, we will apparently go to Birmingham in early March for a mediation. A mediation is a process whereby the parties to a lawsuit attempt to settle the case. If we do settle the case, nothing that happened with regard to your deposition will be of any importance at all.

Again, thank you for responding to my earlier correspondence. I will certainly keep you informed of matters regarding the civil case as they develop. Also, as I have advised you in the past, it would certainly be in your best interest to find a lawyer to represent you with regard your Rule 32 motion and other aspects of the criminal case. I simply cannot represent you in that regard because I have almost no knowledge of that area of law practice.

Sincerely

ROTHSCHILD & MORGAN, P.C.

W. Donald Morgan, Jr.

WDMjr/pw/01235

IN THE COURT OF CRIMINAL APPEALS
STATE OF ALABAMA

Ex Parte Terry Ligon,         *
        Petitioner,     *

                       *         Case No.
      vs.            *         CR-03-0829

                       *
State of Alabama,         *         Re: (CC-01-0352-0356)
(Russell County-Circuit Court),  *
        Respondent,     *

                       *

## MOTION TO PROVIDE PETITIONER WITH ATTACHMENTS TO RESPONDENT'S ORDER

Comes now the petitioner, Terry Ligon, pro-se, in the above styled cause and respectfully moves this Honorable Court to Order that the respondent court provide him with the attachments to the reply filed with this court, and for good cause states the following:

### FACTS

1.) On March 12, 2004, this Honorable Court issued an Order to the Circuit Court of Russell County, Al., to respond to the allegations in petitioner's A.R.Cr.P., Rule 32, petition for post-conviction relief.

2.) On March 30, 2004, the Circuit Court filed its response with this Court, that response states; "A copy of the entry of pleas of guilty and the sentencing phase is attached.".

3.) On April 6, 2004, petitioner received his copy of the response from the Circuit Court, yet there were no "attachments" as mentioned in the response Order supplied to petitioner, therefore, petitioner did not receive a copmplete copy of the lower court's order and attachments as provided he should by the Rules of Civil Procedure. See: A.R.C.P., Rule 5(a).

Wherefore, your petitioner respectfully moves this Honorable Court to Order the lower court to provide a complete copy of the attachments listed in the Court's response to petitioner forthwith, that he may perfect his objections to such, and proceed as required by the A.R. Cr.P. and this Honorable Court.

EXHIBIT #4

Petitioner prays this Honorable Court to grant this motion.

Respectfully submitted,

*Terry Ligon*

Terry Ligon, #220217
Ventress Correctional Facility
P.O. Box 767
Clayton, AL. 36016

## Certificate of Service

I hereby certify that I have served a copy of the foregoing motion upon the respondent, by placing same in the U.S. Mail, first class postage pre-paid, and properly addressed as follows: Honorable George R. Greene, Judge, Circuit Court of Russell County, P.O. Box 518, Phenix City, Al., 36868-0510, on this the 9th day of April, 2004.

*Terry Ligon*

Terry Ligon, 220217

IN THE CIRCUIT COURT OF RUSSELL COUNTY
STATE OF ALABAMA

TERRY LIGON,
     Defendant/Apellant,

    vs.

STATE OF ALABAMA,
     Plaintiff/Apellee

CASE NOS. CC-01-352-356

## MOTION FOR A FREE TRANSCRIPT OF PLEA AND SENTENCING HEARINGS.

Comes now the defendant, Terry Ligon, pro-se, in the above styled cause and respectfully moves this Honorable Court for a free transcript/recording copy of the plea and sentencing hearings in the above cases, and for good cause states the following:

1.) On March 30, 2004, this Honorable Court dismissed defendant's A.R.Cr.P., Rule 32 petition for post-conviction relief, without conducting a hearing on the issues therein, the trial court court did not make any factual findings in its Order to dismiss said petition concerning the issues presented, and defendant cannot be precluded from appealing his plea of guilty and sentence if the plea was not knowingly, intelligently or voluntarily rendered based upon appointed counsel's ineffective assistance to him.

2.) Defendant respectfully avers that he did not waive his right to appeal the issue of ineffective assistance of counsel. i.e., See: "Explanation of Rights and Plea of Guilty form signed by the defendant, his counsel and this Honorable Court on September 10, 2001.

3.) Defendant's financial status has not improved since the filing and granting of his "in forma pauperis" application and motion in the above petition on March 13, 2003.

EXHIBIT #5

4.) Defendant avers that a copy of the reporter's transcript of the plea and sentencing hearings in the above referenced case are necessary to perfect his appeal.

5.) Accordingly, defendant avers that A.R.Cr.P., Rule 26.10 and Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891 (1956), provide that the defendant be furnished with a free copy of the transcript for appeal purposes.

Wherefore, premises considered defendant respectfully moves this Honorable Court to grant this motion and Order the clerk/court reporter to provide said transcript to your defendant free of charge.

Respectfully submitted, on this

the 15th day of April, 2004.

Terry Ligon, #226217
V.C.F. -- P.O. Box 767
Clayton, Al. 36016

# In The Matter Of:

*TAQUONNA LAW, ET AL.   v.*
*TERRY LIGON, ET AL.*

---

*LAWANDA LAW*
*January 7, 2003*

---

*TYLER, EATON, MORGAN, NICHOLS & PRITCHETT*
*COURT REPORTING*
*1975 SOUTHTRUST TOWER*
*420 NORTH TWENTIETH STREET*
*BIRMINGHAM, AL  35203*
*(205) 252-9152    FAX: (205) 252-0196*

*Original File LAWL VI, 150 Pages*
*Min-U-Script® File ID: 2537849815*

# Word Index included with this Min-U-Script®

EXHIBIT #6

January 7, 2003

TERRY LIGON, ET AL.

Page 5

[1]        INDEX
[2]                        PAGE:
[3] EXAMINATION BY MR. DAWSEY ............. 7
[4] EXAMINATION BY MS. MINOR............. 117
[5] REEXAMINATION BY MR. DAWSEY......... 147
[6] REEXAMINATION BY MS. MINOR.......... 148
[7]

[8]        DEFENDANT'S EXHIBITS

[9]

[10] Exhibit 1 ............................ 8
[11] Exhibit 2............................ 98
[12] Exhibit 3........................... 100
[13] Exhibit 4........................... 103
[14] Exhibit 5........................... 141
[15]

[16]

[17]

[18]

[19]

[20]

[21]

[22]

[23]

Page 6

[1] I, Donald R. Eaton, a
[2] Registered Professional Reporter of
[3] Birmingham, Alabama, and a Notary Public
[4] for the State of Alabama at Large, acting
[5] as Commissioner, certify that on this
[6] date, pursuant to Rule 30 of the Alabama
[7] Rules of Civil Procedure and the
[8] foregoing stipulation of counsel, there
[9] came before me at 379 Highway 239, 925
[10] Broad Street, Phenix City, Alabama, on
[11] the 7th day of January, 2003, commencing
[12] at 9:05 a.m., LAWANDA LAW, witness in the
[13] above cause, for oral examination,
[14] whereupon the following proceedings were
[15] had:
[16]    THE REPORTER: Will we have
[17] the usual stipulations?
[18]    MR. FEES: Fine with me.
[19]    MR. DAWSEY: Yes.
[20]
[21]    LAWANDA LAW,
[22] being first duly sworn, was examined and
[23] testified as follows:

Page 7

[1]
[2]    MR. DAWSEY: Before we get
[3] started today, I'm going to renew my
[4] grounds to re-depose Ms. Law that we
[5] discussed yesterday. First, that I
[6] understand that she may be bringing a
[7] seat belt defect allegation against
[8] Saturn. If she were to do so, then
[9] Saturn will need to re-depose her for
[10] that purpose. Also, we have failed to
[11] receive answers to the request for
[12] production and sufficient answers to
[13] interrogatories in her individual
[14] capacity and on behalf of her son
[15] Cornelius. And Saturn needs to preserve
[16] its right to re-depose her should new
[17] information become available through
[18] those means regarding that information.
[19]    MR. FEES: That's fine.
[20]
[21]        EXAMINATION BY MR. DAWSEY:
[22]    Q: Ms. Law, I know you sat
[23] through a long day yesterday and saw how

Page 8

[1] things work in a deposition. Have you
[2] ever given a deposition before?
[3]    A: No.
[4]    (Whereupon, Defendant's
[5] Exhibit 1 was marked
[6] for identification.)
[7]    Q: I've handed you five pages
[8] which I have marked as Defendant's
[9] Exhibit 1 to your deposition. Have you
[10] ever seen that?
[11]    A: Yes.
[12]    Q: You have?
[13]    A: Yes.
[14]    Q: And did you review all the
[15] matters on those five pages?
[16]    A: Yes.
[17]    Q: Did you bring anything with
[18] you in response to what is requested that
[19] you bring in Defendant's Exhibit 1?
[20]    A: No.
[21]    MR. DAWSEY: Doug, again
[22] should anything come up that is
[23] responsive to the request made in the

Page 41

[1] you always put your seat belt on?

[2]    A: Correct.

[3]    Q: So would it be safe to say

[4] that when you rode in the 1991 Saturn

[5] before the accident before Taquonna

[6] bought it, you had your seat belt on?

[7]    A: Correct.

[8]    Q: Did you ever have any problems

[9] with the seat belts before Taquonna

[10] bought the car?

[11]    A: No.

[12]    Q: After Taquonna bought the car

[13] in January of 1991, how often would you

[14] ride in the 1991 Saturn?

[15]    A: Well, I don't know how often I

[16] rode in it because I didn't stay in

[17] Columbus with her. But I'll say if we

[18] were going somewhere, because we normally

[19] ride together, I ride with her. But I

[20] can't tell you how many times I've rode

[21] with her.

[22]    Q: How many time a week would you

[23] ride with her in that period between

Page 42

[1] January 1991 and the subject accident?

[2]    A: January '91?

[3]    Q: When she bought the car — I

[4] mean 2001. Excuse me. Thank you.

[5]    MR. FEES: Be patient with

[6] him.

[7]    A: Maybe two times out of the

[8] week between the seven days.

[9]    Q: During that period between

[10] January of 2001 and the subject accident

[11] that you rode in the '91 Saturn, did you

[12] ever have any problems with the seat

[13] belts?

[14]    A: No.

[15]    Q: Did you always use your seat

[16] belt during that time?

[17]    A: Yes.

[18]    Q: When you say you always used

[19] it, did you always fasten the lap belt in

[20] addition to the automatic shoulder strap?

[21]    A: No, I didn't always fasten the

[22] lap belt.

[23]    Q: How many times would you

Page 43

[1] fasten the lap belt during that period?

[2]    A: I wouldn't fasten the lap belt

[3] regular, I mean, maybe half of the times

[4] that I was in there, but nothing that I

[5] was doing regular, to fasten the lap

[6] belt.

[7]    Q: About 50 percent of the time

[8] you would fasten the lap belt?

[9]    A: I'll say that.

[10]    Q: Did you ever read part of the

[11] owner's manual for the 1991 Saturn?

[12]    A: No.

[13]    Q: Did you notice or read any

[14] warnings inside the 1991 Saturn?

[15]    A: No.

[16]    Q: Did Curtis Wright ever tell

[17] you anything about the 1991 Saturn?

[18]    A: Tell me?

[19]    Q: Yes.

[20]    A: No.

[21]    Q: Did Taquonna ever discuss the

[22] 1991 Saturn with you?

[23]    A: Not that I recall.

Page 44

[1]    Q: Describe Cornelius for me.

[2]    A: He's about — he's a short

[3] person. He's about as tall as this

[4] table. He has curly, like a curly Afro.

[5] He likes candy.

[6]    Q: What is his personality like?

[7]    A: He don't really deal with

[8] people. If he don't know you, he

[9] don't really —

[10]    Q: Is he shy?

[11]    A: He's not shy. He just if he

[12] don't know you, he don't really want to

[13] deal with you.

[14]    Q: You don't matter to him?

[15]    A: No.

[16]    Q: When did he first start to

[17] walk?

[18]    A: He started walking when he was

[19] about ten months.

[20]    Q: Did he have any injuries in

[21] this accident?

[22]    A: He didn't really have no

[23] injuries. He went and got checked out at

Page 81

[1] vehicle?

[2]   A: Taquonna.

[3]   Q: Just the two of you?

[4]   A: I'm not certain, but I know

[5] Taquonna went.

[6]   Q: How did you — where was the

[7] vehicle when you went to see it?

[8]   A: I don't know the name of the

[9] place, but it was in Phenix City.

[10]   Q: Like a junkyard?

[11]   A: Yes.

[12]   Q: Wrecker service?

[13]   A: Yeah.

[14]   Q: How did you get to the wrecker

[15] service?

[16]   A: We were in Leroy — Leroy went

[17] too. We was in his car.

[18]   Q: Did you notice Taquonna take

[19] anything out of the vehicle?

[20]   A: Her purse and Khalil's baby

[21] bag, and that's all I can recall.

[22]   Q: Did you notice Leroy take

[23] anything out of the car?

Page 82

[1]   A: No.

[2]   Q: Did you take anything out of

[3] the car?

[4]   A: No.

[5]   Q: Is this the first time

[6] Taquonna had seen the car since the

[7] accident?

[8]   A: Not sure.

[9]   Q: Is this the first time Leroy

[10] had seen the car after the accident?

[11]   A: Yes.

[12]   Q: He was not at his mother's

[13] house when you were taking him there?

[14]   A: When I was taking who there?

[15]   Q: When you were taking Cornelius

[16] to his grandmother's house —

[17]   A: No.

[18]   Q: — to drop him off before the

[19] accident, Leroy was not at his mother's

[20] house?

[21]   A: No.

[22]   Q: Did either you or Leroy or

[23] Taquonna talk to anyone else while you

Page 83

[1] were there visiting the car or viewing

[2] the car?

[3]   A: No, other than the lady that

[4] showed us, you know, the owner of the

[5] place and told us it was okay for us to

[6] go in and stuff.

[7]   Q: Did anything other than her

[8] giving you permission to go look at the

[9] car occur in that conversation?

[10]   A: No.

[11]   Q: Did she make any comment about

[12] the car?

[13]   A: No.

[14]   Q: Do you recall her name?

[15]   A: No.

[16]   Q: Do you recall what she looked

[17] like?

[18]   A: She was a short, white female.

[19]   Q: About how old?

[20]   A: Maybe late 30s, early 40s.

[21]   Q: What injuries did you receive

[22] because of this accident, Ms. Law?

[23]   A: I don't know all of them, but

Page 84

[1] I can tell you the ones I know. My

[2] hands, my back and my neck, my fingers.

[3] The bone in my finger was like stiff sort

[4] of. And I was having really bad

[5] headaches, so I had to have surgery.

[6]   Q: What else?

[7]   A: That's about it.

[8]   Q: Tell me about your back

[9] problems.

[10]   A: It simply hurt it when I'd

[11] maybe bend. It was more like in my

[12] bones, you know. It was like my whole

[13] back was aching.

[14]   Q: Do you still have problems

[15] with that today?

[16]   A: No.

[17]   Q: About how long did you notice

[18] having the back problems?

[19]   A: From that time up until I went

[20] back to work.

[21]   Q: When would that have been?

[22]   A: I went back to work in, I

[23] think it was July 12th.

# In The Matter Of:

*TAQUONNA LAW, ET AL.* v.
*TERRY LIGON, ET AL.*

---

*TAQUONNA LAW*
*January 7, 2003*

---

*TYLER, EATON, MORGAN, NICHOLS & PRITCHETT*
*COURT REPORTING*
*1975 SOUTHTRUST TOWER*
*420 NORTH TWENTIETH STREET*
*BIRMINGHAM, AL  35203*
*(205) 252-9152    FAX: (205) 252-0196*

Original File LAW1.V1, 339 Pages
Min-U-Script® File ID: 3696092857

# Word Index included with this Min-U-Script®

TERRY LIGON, ET AL.

Page 1

[1]      IN THE CIRCUIT COURT

[2]   OF THE TWENTY-SIXTH JUDICIAL CIRCUIT

[3]   IN AND FOR RUSSELL COUNTY, ALABAMA

[4]

[5]

[6]  CIVIL ACTION NO. CV-01-0311

[7]

[8]  TAQUONNA LAW, et al.,

          Plaintiffs,

[9]

       vs.

[10]

        TERRY LIGON, et al.,

[11]      Defendants.

[12]

[13]

[14]

[15]      DEPOSITION

[16]         of

[17]      TAQUONNA LAW

[18]    JANUARY 7, 2003

[19]

[20]

[21]  TAKEN BEFORE: Donald R. Eaton

[22]      Registered Professional

[23]      Reporter and Notary Public

Page 2

[1]      STIPULATION

[2]      IT IS STIPULATED AND AGREED,

[3]  by and between the parties, through their

[4]  respective counsel, that the deposition

[5]  of TAQUONNA LAW may be taken before

[6]  Donald R. Eaton, Commissioner, Registered

[7]  Professional Reporter and Notary Public,

[8]  State at Large;

[9]      That the signature to and

[10]  reading of the deposition by the witness

[11]  is waived, the deposition to have the

[12]  same force and effect as if full

[13]  compliance had been had with all laws and

[14]  rules of Court relating to the taking of

[15]  depositions;

[16]      That it shall not be necessary

[17]  for any objections to be made by counsel

[18]  to any questions, except as to form or

[19]  leading questions, and that counsel for

[20]  the parties may make objections and

[21]  assign grounds at the time of trial, or

[22]  at the time said deposition is offered in

[23]  evidence, or prior thereto.

Page 3

[1]      APPEARANCES

[2]

[3]  FOR THE PLAINTIFF:

[4]    Mr. Douglas J. Fees

[5]    Attorney at Law

[6]    Douglas J. Fees, P.C.

[7]    401-403 Madison Street

[8]    Huntsville, Alabama 35804

[9]

[10]  FOR THE DEFENDANT, EVENFLO COMPANY, INC.:

[11]    Ms. Teresa G. Minor

[12]    Attorney at Law

[13]    Balch & Bingham

[14]    1710 Sixth Avenue North

[15]    Birmingham, Alabama 35203

[16]      -and-

[17]    Mr. James R. McKoon

[18]    Attorney at Law

[19]    McKoon, Thomas & Gray

[20]    Post Office Box 3220

[21]    Phenix City, Alabama 36868-3220

[22]

[23]

Page 4

[1]  APPEARANCES, (CONTINUING)

[2]

[3]  FOR THE DEFENDANT, TERRY LIGON:

[4]    Mr. Andrew Rothschild

[5]    Attorney at Law

[6]    Rothschild & Morgan

[7]    Post Office Box 2788

[8]    Columbus, Georgia 31902-2788

[9]

[10]  FOR THE DEFENDANT, SATURN:

[11]    Mr. Marc Dawsey

[12]    Attorney at Law

[13]    Rumberger, Kirk & Caldwell

[14]    2700 Highway 280 East

[15]    Suite 480

[16]    Birmingham, Alabama 35223-2446

[17]

[18]  OTHERS PRESENT:

[19]    Ms. Lawanda Law

[20]    Mr. Jonathan Law

[21]

[22]

[23]

TERRY LIGON, ET AL.

Page 25

[1]   A: Six seventy-five an hour.

[2]   Q: Do you remember who your

[3] supervisor was?

[4]   A: Jesse Battles.

[5]   Q: Is that a man or a woman?

[6]   A: Man.

[7]   Q: Where was your next job?

[8]   A: Columbus Parks and Recreation.

[9]   Q: When did you start there?

[10]   A: September 2001.

[11]   Q: Are you still there now?

[12]   A: Yes.

[13]   Q: What do you do for them?

[14]   A: Administrative assistant.

[15]   Q: Is that where you were working

[16] while you were going to school at

[17] Columbus Technical College?

[18]   A: Yes.

[19]   Q: Who is your supervisor?

[20]   A: Beth Thornell.

[21]   Q: Has Ms. Thornell been your

[22] supervisor the whole time you have been

[23] there?

Page

[1]   Q: Any other jobs, Ms. Law, that

[2] you have had since you graduated from

[3] high school?

[4]   A: No.

[5]   Q: You told me you have never

[6] been married?

[7]   A: No.

[8]   Q: Who is Khalil's father?

[9]   A: Prenell Sutton.

[10]   Q: Can you spell the first name

[11] for me?

[12]   A: P-r-e-n-e-l-l.

[13]   Q: And where is he?

[14]   A: In Montezuma, Georgia.

[15]   Q: Did he give you any kind of

[16] child support for Khalil?

[17]   A: No.

[18]   Q: Is he aware of Khalil's death?

[19]   A: Yes.

[20]   Q: Is he aware of this lawsuit?

[21]   A: Yes.

[22]   MS. MINOR: Go off just a

[23] minute.

Page 26

[1]   A: Yes.

[2]   Q: And what is your rate of pay

[3] there?

[4]   A: Seven sixteen an hour.

[5]   Q: Did you have any employment

[6] between March of 2001 and September of

[7] 2001?

[8]   A: No.

[9]   Q: Were you physically able to

[10] work?

[11]   A: At Char-Broil or anywhere?

[12]   Q: Anywhere, yes, ma'am.

[13]   A: (No response.)

[14]   Q: My question is mainly I don't

[15] know the extent of the injuries you

[16] sustained in this car accident. And I'll

[17] certainly get into that with you. Were

[18] you in the hospital or anything that

[19] physically prevented you from working?

[20]   A: I was not in the hospital.

[21]   Q: What was your source of income

[22] from March of 2001 to September of 2001?

[23]   A: My mother.

Page 28

[1]   (Off-the-record discussion.)

[2]   Q: (BY MS. MINOR:) Let's go back

[3] on, Ms. Law, at the time of Khalil's

[4] death, who was he living with?

[5]   A: Myself and my mother.

[6]   Q: Had he ever lived with his

[7] father, Prenell Sutton?

[8]   A: No.

[9]   Q: And Mr. Sutton had not given

[10] him any kind of financial support?

[11]   A: No.

[12]   MS. MINOR: Just for the

[13] record, Doug, we discussed off the record

[14] whether Mr. Sutton had any interest in

[15] this lawsuit. Representations were made

[16] that because Ms. Law had sole custody of

[17] Khalil at the time of his death, it's the

[18] plaintiff's position that she is the one

[19] who has the legal capacity to bring this

[20] suit for wrongful death; am I correct?

[21]   MR. FEES: That's correct.

[22]   Q: (BY MS. MINOR:) Have you ever

[23] had any children other than Khalil?

TAQUONNA LAW, ET AL.   v.
TERRY LIGON, ET AL.

TAQUONNA LAW
January 7, 2005

---

Page 289

[1] memory. Did you testify that you did or
[2] did not remember whether or not you had
[3] your lap belt on at the time of the
[4] accident?
[5]   A: I testified that I didn't
[6] remember.
[7]   Q: Okay. Khalil was asleep at
[8] the time of the accident?
[9]   A: Correct.
[10]   Q: Was Cornelius behaving
[11] himself?
[12]   A: I'm not sure if he was asleep
[13] as well. I'm not — he wasn't making any
[14] noise or anything.
[15]   Q: Nothing distracting you?
[16]   A: No.
[17]   Q: Okay. I need you to describe
[18] your body movements during the accident,
[19] which way your body moved from the point
[20] that Mr. Ligon's Blazer hit your Saturn
[21] until the Saturn came to rest.
[22]   A: I remember my chest hitting
[23] the steering wheel. That's about all I

Page 290

[1] remember is my chest hitting the steering
[2] wheel.
[3]   Q: Did that leave a bruise?
[4]   A: It didn't leave a bruise, but
[5] it left it sore.
[6]   Q: Was there any visible mark of
[7] the chest hitting the steering wheel?
[8]   A: None on the chest.
[9]   Q: Was there any visible mark on
[10] the steering wheel?
[11]   A: What do you mean, a mark on —
[12] like any — what do you mean?
[13]   Q: Did the steering wheel
[14] reflect — did you notice anything on the
[15] steering wheel that reflected the fact
[16] that your chest hit it?
[17]   A: No.
[18]   Q: Did your head come into
[19] contact with anything during the accident
[20] sequence?
[21]   A: No.
[22]   Q: You recall it did not or no,
[23] you don't remember?

Page 291

[1]   A: Don't remember. I don't
[2] remember.
[3]   Q: Okay. Do you remember either
[4] of your shoulders hitting anything during
[5] the accident?
[6]   A: My right arm had to hit
[7] something because I have a scratch in a
[8] U.
[9]   Q: Okay.
[10]   A: So I can't really say what it
[11] hit. I'm not sure.
[12]   Q: Did you document that scratch
[13] at any time, take any pictures of it,
[14] anything like that?
[15]   A: No.
[16]   Q: Is it still visible today?
[17]   A: Yes.
[18]   Q: Could you describe where on
[19] your arm and how long a scar it is?
[20]   A: It's here. There it is
[21] (indicating).
[22]   Q: It's your left arm?
[23]   A: My right arm.

Page 292

[1]   Q: Your right arm. I'm sorry.
[2] And it's up close to your shoulder?
[3]   A: Yes. Can you see it from —
[4]   Q: I can.
[5]   A: Okay.
[6]   Q: Is that the only
[7] distinguishing mark you have after the
[8] accident?
[9]   A: Yes.
[10]   Q: Do you recall any other body
[11] movements that occurred to you during the
[12] accident?
[13]   A: No.
[14]   Q: Are you aware of any of the
[15] other passengers in the car and their
[16] body movements during the accident?
[17]   A: Lawanda went forward, I think.
[18] Khalil went forward. I'm not sure about
[19] Jonathan and Cornelius.
[20]   Q: Are you aware of anything that
[21] Lawanda came in contact with on the
[22] inside of the vehicle?
[23]   A: It was either the windshield

---

# In The Matter Of:

*TAQUONNA LAW, ET AL.   v.*
*TERRY LIGON, ET AL.*

---

## JONATHAN LAW
## January 7, 2003

---

*TYLER, EATON, MORGAN, NICHOLS & PRITCHETT*
*COURT REPORTING*
*1975 SOUTHTRUST TOWER*
*420 NORTH TWENTIETH STREET*
*BIRMINGHAM, AL  35203*
*(205) 252-9152    FAX: (205) 252-0196*

*Original File LAWJ.V1, 117 Pages*
*Min-U-Script® File ID: 1560269073*

# Word Index included with this Min-U-Script®

Page 1

[1]      IN THE CIRCUIT COURT

[2]   OF THE TWENTY-SIXTH JUDICIAL CIRCUIT

[3]   IN AND FOR RUSSELL COUNTY, ALABAMA

[4]

[5]

[6] CIVIL ACTION NO. CV-01-0311

[7]

[8] TAQUONNA LAW, et al.,

        Plaintiffs,

[9]

    vs.

[10]

    TERRY LIGON, et al.,

[11]    Defendants.

[12]

[13]

[14]    DEPOSITION

[15]      of

[16]    JONATHAN LAW

[17]   JANUARY 7, 2003

[18]

[19]

[20]

[21] TAKEN BEFORE: Donald R. Eaton

[22]      Registered Professional

[23]      Reporter and Notary Public

Page 2

[1]      STIPULATION

[2]   IT IS STIPULATED AND AGREED,

[3] by and between the parties, through their

[4] respective counsel, that the deposition

[5] of JONATHAN LAW may be taken before

[6] Donald R. Eaton, Commissioner, Registered

[7] Professional Reporter and Notary Public,

[8] State at Large;

[9]      That the signature to and

[10] reading of the deposition by the witness

[11] is waived, the deposition to have the

[12] same force and effect as if full

[13] compliance had been had with all laws and

[14] rules of Court relating to the taking of

[15] depositions;

[16]      That it shall not be necessary

[17] for any objections to be made by counsel

[18] to any questions, except as to form or

[19] leading questions, and that counsel for

[20] the parties may make objections and

[21] assign grounds at the time of trial, or

[22] at the time said deposition is offered in

[23] evidence, or prior thereto.

Page 3

[1]      APPEARANCES

[2]

[3] FOR THE PLAINTIFF:

[4]   Mr. Douglas J. Fees

[5]   Attorney at Law

[6]   Douglas J. Fees, P.C.

[7]   401 Madison Street

[8]   Huntsville, Alabama 35804

[9]

[10] FOR THE DEFENDANT, EVENFLO COMPANY, INC.:

[11]   Ms. Teresa G. Minor

[12]   Attorney at Law

[13]   Balch & Bingham

[14]   1710 Sixth Avenue North

[15]   Birmingham, Alabama 35203

[16]      -and-

[17]   Mr. James R. McKoon

[18]   Attorney at Law

[19]   McKoon, Thomas & Gray

[20]   Post Office Box 3220

[21]   Phenix City, Alabama 36868-3220

[22]

[23]

Page 4

[1]   APPEARANCES, (CONTINUING)

[2]

[3] FOR THE DEFENDANT, TERRY LIGON:

[4]   Mr. Andrew Rothschild

[5]   Attorney at Law

[6]   Rothschild & Morgan

[7]   Post Office Box 2788

[8]   Columbus, Georgia 31902-2788

[9]

[10] FOR THE DEFENDANT, SATURN CORPORATION:

[11]   Mr. Marc Dawsey

[12]   Attorney at Law

[13]   Rumberger, Kirk & Caldwell

[14]   2700 Highway 280 East

[15]   Suite 480

[16]   Birmingham, Alabama 35223-2446

[17]

[18] OTHERS PRESENT:

[19]   Ms. Lawanda Law

[20]

[21]

[22]

[23]

**Page 33**

[1]    Q: How do you get back and forth
[2] to Montezuma?
[3]    A: My brother comes and picks me
[4] up or a friend of mine would take me.
[5]    Q: Have you ever operated one car
[6] regularly?
[7]    A: With it being someone else's?
[8]    Q: Yes.
[9]    A: When I pick the kids up from
[10] school.
[11]    Q: Whose car do you use when you
[12] do you that?
[13]    A: My mother or my sisters.
[14]    Q: When you ride in a car or
[15] drive a car, do you use your seat belt?
[16]    A: Yes.
[17]    Q: All the time?
[18]    A: Yes.
[19]    Q: Have you ever been in an
[20] accident other than the accident we're
[21] here about today?
[22]    A: Yes.
[23]    Q: How many?

**Page 34**

[1]    A: One I can recall.
[2]    Q: What were the circumstances of
[3] the accident?
[4]    A: It was a head-on collision on
[5] the 13th and 13th in I want to say '94.
[6]    Q: Is that here in Columbus?
[7]    A: Yes.
[8]    Q: Any other accidents other than
[9] that one and the one we're here about
[10] today?
[11]    A: No, I don't think so.
[12]    Q: Did you sustain any injuries
[13] in that first accident, in the 1994
[14] accident?
[15]    A: My hip bone's cracked.
[16]    Q: Which hip?
[17]    A: My left. I had lacerations on
[18] the forehead and on both arms. Oh, and
[19] here (indicating).
[20]    Q: Anything else?
[21]    A: No.
[22]    Q: Other than the 1994 accident,
[23] no other accidents until — well, other

**Page 35**

[1] than the one we're here about today?
[2]    A: That I can recall.
[3]    Q: Did you sustain any injuries
[4] in the accident we're here about today?
[5]    A: My neck and my back.
[6]    Q: Are you making a claim against
[7] Saturn for the injuries to your neck and
[8] back?
[9]    A: Not as of now.
[10]    Q: Do you hold Saturn responsible
[11] for the injuries to your neck and back?
[12]    A: (No response.)
[13]    Q: Do you feel like Saturn did
[14] anything to cause or contribute to your
[15] injuries?
[16]    A: If they did anything?
[17]    Q: Yes. Did the automobile cause
[18] or contribute anything to your injuries
[19] in this wreck?
[20]    A: The vulnerability of the
[21] vehicle. I mean —
[22]    Q: So you feel Saturn is
[23] responsible for your injuries?

**Page 36**

[1]    A: Not solely responsible because
[2] of the other drunk driver, of course,
[3] but — is that enough answer?
[4]    Q: If you're finished.
[5]    A: Yeah.
[6]    Q: Describe your neck pain that
[7] you have today.
[8]    A: My neck, it aches all the
[9] time, you know, right in the center of my
[10] neck here. And my back, it aches
[11] sometimes. It doesn't ache, you know,
[12] like daily.
[13]    Q: Did your neck and back ache
[14] before the accident?
[15]    A: No.
[16]    Q: Do your neck and back prevent
[17] you from doing anything?
[18]    A: Not anything, some things.
[19]    Q: And what things do your neck
[20] and backaches prevent you from doing?
[21]    A: I can't lift very, very heavy
[22] objects.
[23]    Q: When you say very, very heavy,



STATE OF ALABAMA
COUNTY OF BARBOUR

RE: CR-03-1117

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said
County and State of Alabama at large, personally appeared Terry Ligon,
#220217, who being known to me and being first duly sworn, deposes and
says the following:

My name is Terry Ligon, #220217, and I am over the age of 21 years
and in sound mind and health. This Affidavit is prepared to swear to the
authenticity of the Exhibits marked #1-6 as attached to my Motion To Stay
Appeal, etcetera. To the best of my knowledge these exhibits are true
copies of what I have received from Mr. W. Donald Morgan, Jr. (Exhibits
#2, 3, and #6). I have not altered or changed anything of the contents
in these exhibits other than to "highlight" certain questions and answers
for the sake of expediency and ease of reading the material.

Exhibits marked #1, 2, and #5 are copies of Motions I have filed
the Courts in the above case. I swear under the penalty of perjury that
the above statements by me are true and correct, so help me God!

Terry Ligon, #220217

Sworn to and subscribed before me on this the 19th day of May, 2004.

My Commission Expires August 18, 2007

Notary Public  CRA

Carolyn R. Abercrombie
My commission expires  CRA